UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RAYMOND JACKSON and MAURGREITA MAURGREITA, individually and as trustees, et al., | ) ) ) | No. 3:09-cv-00908 |
| | ) | Judge Sharp |
| Plaintiffs, | ) ) | JURY DEMAND |
| v. | ) ) | |
| REGIONS BANK, | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANT'S SECOND MOTION TO DISMISS

H. Naill Falls, Jr. (BPR #6787)
John B. Veach III (BPR #8994)
FALLS & VEACH
1143 Sewanee Rd.
Nashville, TN 37220
(615) 242-1800
nf@fallsveach.com

Kenneth R. Jones, Jr. (BPR #7278)
JONES HAWKINS & FARMER, PLC
150 Fourth Avenue North, Suite 1820
Nashville, TN 37219
(615) 726-0050
kjones@joneshawkinsfarmer.com

Attorneys for Plaintiffs

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................... 2

II. STANDARD OF REVIEW ..........................................................................4

III. PLAINTIFFS HAVE STATED VIABLE NEGLIGENCE/
RECKLESSNESS CLAIMS ....................................................................4

    A.  Tennessee Statutes Support Plaintiffs' Negligence Claim ……………6

    B.  Tennessee Case Law Supports Plaintiffs' Negligence Claim ……….. 7

    C.  Case Law From Other Jurisdictions………………………………  15

    D.  Defendants' Authority Does Not Justify The Reversal Of Judge
Haynes' Prior Ruling …………………………………………………18

    E.  Plaintiffs' Have Sufficiently Pled Recklessness And Causation……..20

IV. DEFENDANT'S ARGUMENTS CONCERNING CONSUMER
PROTECTION ACT CLAIM ARE WITHOUT MERIT..........................23

V. THERE IS NO BASIS FOR DISMISSING PLAINTIFFS'
UNJUST ENRICHMENT CLAIM............................................................26

VI. CONCLUSION.........................................................................................28

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

_____

| | | |
|---|---|---|
| RAYMOND JACKSON and | ) | |
| MAURGREITA JANE JACKSON, | ) | |
| individually and on behalf of NICOLAS | ) | |
| JAMES ALLAN JACKSON, a minor, and | ) | |
| JACOB LOUIS DONALD JACKSON, a minor; | ) | |
| MAURGREITA JANE JACKSON, | ) | |
| in her capacity as trustee of THE | ) | No. 3:09-cv-00908 |
| BRENDA G. DUFF IRREVOCABLE | ) | |
| TRUST, THE JANE JACKSON PB TRUST, | ) | Judge Sharp |
| andTHE JAMES DUFF PB TRUST; and | ) | |
| JAMES DUFF, individually and on behalf of | ) | JURY DEMAND |
| LUCY MARIE DUFF, a minor, and | ) | |
| RACHEL PAULINA DUFF, a minor, | ) | |
| BEHDAD AHMADI, SCOTT D. BAILEY, | ) | |
| JOHN AND CLAUDIA BRUCE, | ) | |
| JOSEPH C. COSBY JR., FRANK DAWS, | ) | |
| PATRICE DAWS, MARTHA E. STINSON, | ) | |
| PHILIP AND TARA JONES, KI SUK LIM, | ) | |
| TIMOTHY MANUS, ERROL MITCHELL, | ) | |
| MARY L. RAY, JOSE and BLANCA NARCIO, | ) | |
| JERRY A. MATTHEWS, and TRACI PEEL, | ) | |
| Individually and as Executor of the Estate of | ) | |
| Clara Peel, Deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REGIONS BANK, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO DISMISS**
_____

Plaintiffs respectfully submit this brief in opposition to defendant Regions Bank's

procedurally inappropriate, second attempt at a motion to dismiss for failure to state a claim.

1

# I.  PRELIMINARY STATEMENT

Defendant's motion to dismiss should, in candor and fairness, have been called a motion to reconsider.  In August 2010, Judge Haynes carefully considered and rejected the arguments Regions now reasserts.  Although defendant disingenuously claims that the case law relevant to plaintiffs' negligence claims has "matured significantly," Regions cites only two negligence cases decided since Judge Haynes' ruling, and those decisions in no way undermine the substantial authority on which Judge Haynes relied.  In truth, it is highly unlikely that the present motion would have been filed if this case had not been transferred from Judge Haynes to this Court.

Also, defendant is inappropriately using an agreed housekeeping complaint, filed to assert in one case claims that had been filed in several consolidated cases, as a subterfuge to seek reconsideration of earlier rulings.  But Regions implicitly concedes that its motion seeks reconsideration of Judge Haynes' earlier order by arguing that the prior ruling is not "law of the case."  This argument is irrelevant.  As discussed below, whether they address rulings that are law of the case or not, motions to reconsider should not be granted absent special circumstances, particularly when made by another judge of coordinate jurisdiction.

Regions fails to acknowledge, and comes nowhere close to meeting, the standards applicable to a motion to reconsider.  Defendant also fails to acknowledge that the standard is even more demanding when, as here, the decision of another judge is being challenged.  Nevertheless, even if it were permissible for this Court to consider defendant's motion without the backdrop of Judge Haynes' prior ruling, it is clear that plaintiffs' claims are well-supported by Tennessee law.

2

Regions' motion ignores controlling Tennessee law[1] and mischaracterizes the state of the law in other jurisdictions. In Tennessee and many other states, the courts have, in appropriate cases, carved exceptions to the notion that banks "generally" owe no duty of care to non-customers. When a bank repeatedly ignores significant warnings and a foreseeable risk of embezzlement, the courts have and will impose a duty of reasonable care. This is indeed such a case, given defendant's multi-year disregard of regulatory duties and industry standards that allowed numerous Ponzi scheme operators and money launderers to use the bank's accounts to commit fraud, resulting in the federal government's filing of criminal charges against Regions itself. Courts in Tennessee and elsewhere have permitted negligence and bad faith claims based on facts analogous to those here.

Furthermore, in the Uniform Fiduciaries Act ("UFA"), the Tennessee Legislature has acknowledged that banks may be liable to non-customers under circumstances that are present in this case. The UFA has been so interpreted not only by Judge Haynes in this case, but also by Judge Trauger, who ruled in a very similar lawsuit against Regions that a bank which acts in bad faith may be held liable to non-customers whose money is embezzled from the bank's accounts by a Ponzi scheme operator.[2] Notably, Judge Trauger also held that in light of Tennessee's UFA, Regions' reliance on case law from other jurisdictions was misplaced. *Id.* at 7-10

Defendant's statute of limitations argument regarding plaintiffs' Consumer Protection Act claim is frivolous. There is nothing in the record establishing that plaintiffs knew or should have known of Regions' misconduct more than one year before the filing of their claims.

---

[1] A federal court exercising diversity jurisdiction applies the law of the forum state. *Uhl v. Komatsu Forklift Co., Ltd.,* 512 F.3d 294, 302 (6th Cir. 2008). In this case, Tennessee choice of law rules would select the substantive law of Tennessee because plaintiffs reside and were injured here, defendant does business here, and the actions giving rise to plaintiffs' claims took place here. *See Hataway v. McKinley*, 830 S.W.2d 53 (Tennessee. 1992).

[2] *John L. McLemore, Trustee v. Regions Bank*, No. 3:08-cv-0021 (M.D. Tenn., March 18, 2010) at 7-14 (appendix one).

Defendant's argument regarding plaintiffs' unjust enrichment claim is unsupported by the facts and the law. Plaintiffs have sufficiently alleged that defendant was unjustly enriched by the improper transactions underlying this case. Also, Tennessee law is clear that the receipt of an indirect benefit will support a claim for unjust enrichment.

At best, Regions' authority indicates that courts around the country are divided on the proper legal standard for resolving claims such as those here. Clearly, however, that state of affairs "does not mean that Judge Haynes' ruling was unreasonable; rather, his memorandum represented a reasoned and considered interpretation of conflicting authority." *Jones v. United States*, 2011 U.S. Dist. LEXIS 90868 (M.D.Tenn., August. 15, 2011) (Sharp) (appendix two).

## II.  STANDARD OF REVIEW APPLICABLE TO MOTION

The Sixth Circuit has made clear that a motion to reconsider "should not be used to re-litigate issues previously considered" and should not be granted unless 'there is a clear error of law, newly discovered evidence, an intervening change in controlling la*w*, or to prevent manifest injustice." *Am. Marietta Corp. v. Essroc Cement Corp*., 2003 U.S. App. LEXIS 3211, * 9 (Feb. 19, 2003) (appendix three), *quoting Gencorp, Inc. v. American Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999).

This standard is consistent with the approach of courts around the country. *See, e.g., Archibald v. City of Hartford,* 274 F.R.D. 371, 382 (D.Conn. 2011) *citing Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) ("standard for granting a motion to reconsider is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court"); *Lewis v. Rosenfeld,* 145 F. Supp. 2d 341, 343 (S.D.N.Y. 2001) ("'Motions for reconsideration must be narrowly construed

4

and the standard strictly applied to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court, to ensure finality, and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters"); *Plaskon Electronic Materials, Inc. v. Allied-Signal, Inc., 904 F.Supp.* 644, 669 (N.D. Ohio 1995): (motions for reconsideration run contrary to notions of finality and repose, should be discouraged, and should only be granted "very sparingly"); *Moody v. Ford Motor Co*., 2007 U.S. Dist. LEXIS 44495, * 37 (D. Okla., June 18, 2007) (appendix four) (without new evidence, intervening case law directly on point, or a clear showing that the Court's previous decision was in error, a motion to reconsider should not be granted); *Killebrew v. CSX Transp., Inc*., 2005 U.S. Dist. LEXIS 43099, * 1-2 (M.D. Ala., July 19, 2005) ((appendix five) (motion to reconsider should not be granted unless there is: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice) *citing Wendy's Int'l, Inc. v. Nu-Cape Constr., Inc*., 169 F.R.D. 680, 684 (M. D. Fla. 1996).

In addition, as this Court noted in *Jones v. United States*, 2011 U.S. Dist. LEXIS 90868 (M.D.Tenn., August. 15, 2011), the courts are appropriately reluctant to reconsider and/or reverse the rulings of a judge of coordinate jurisdiction who previously presided over the case. *Accord*, *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 168 (3rd Cir. 1982) ("A disappointed litigant should not be given a second opportunity to litigate a matter that has been fully considered by a court of coordinate jurisdiction, absent unusual circumstances."); *Onque v. Cox Communs. Las Vegas, Inc.*, 2006 U.S. Dist. LEXIS 67153, * 5-7 (D.Nev., Sep. 15, 2006) (appendix six)(court is mindful of the general principle that the various judges who sit in the same court should not attempt to overrule the decisions of each other. . . . . this rule is premised upon principles of comity and uniformity, and the need to preserve the orderly functioning of the

5

judicial process); *M-I LLC v. Argus Green LLC*, 2011 U.S. Dist. LEXIS 96044, * 10 (Aug. 26, 2011) (appendix seven) (when first judge had denied the motion to dismiss for lack of subject matter jurisdiction, judge to whom case was subsequently transferred to decline to disturb prior ruling absent a showing that the prior ruling was clearly erroneous, no longer sound or would work a manifest injustice).

### III.  PLAINTIFFS HAVE STATED A VIABLE NEGLIGENCE/RECKLESSNESS CLAIM

The most striking facet of defendant's negligence argument is its reliance on non-controlling authorities from other jurisdictions.  Regions completely ignores the fact that there are Tennessee statutes, and decisions interpreting them, which acknowledge that under circumstances such as those alleged here, a bank may be held liable to a non-customer. Moreover, courts in Tennessee and elsewhere have frequently permitted negligence and other claims by non-customers against a banking institution.  In contrast, there are <u>no</u> Tennessee cases endorsing Regions' claim that a bank never owes a duty of reasonable care to a non-customer.

### A.  <u>Tennessee Statutes Support Plaintiffs' Negligence Claim</u>

As noted by Judge Haynes, T.C.A. § 35-2-109 of Tennessee's Uniform Fiduciaries Act provides that when a fiduciary makes a deposit of funds held in a fiduciary capacity, the depository bank will not be liable for allowing the fiduciary to withdraw those funds with a personal check **<u>unless</u>** the bank has "actual knowledge" of fiduciary breach or has "**knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith**." *Id.* (emphasis added).  To similar effect is T.C.A. § 35-2-107.

Contrary to the core proposition in defendant's motion, these statutes acknowledge that a bank may be held liable to a non-customer if it acts in "bad faith" in allowing a fiduciary to

6

convert funds held for others to personal use.[3]  Judge Haynes so held, as did Judge Trauger in the case of *John L. McLemore, Trustee v. Regions Bank*, No. 3:08-cv-0021 (M.D. Tenn., March 18, 2010) (appendix one) at 7-14, which arose from facts and allegations highly similar to those in this case.  Furthermore, Judge Trauger concluded that in view of the UFA, consideration of non-Tennessee decisions was inappropriate.

### B.  Tennessee Case Law Supports Plaintiffs' Negligence Claim

"A negligence action requires evidence proving the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) defendant's breach of that duty; (3) injury; (4) causation in fact; and (5) proximate, or legal, cause." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 771 (Tenn. 2006).  Plaintiffs have alleged each of these elements.  Consolidated Complaint, ¶¶ 27-37, 47-70.  Regions incorrectly argues that plaintiffs failed to identify the source of the duty owed by defendant.  In fact, plaintiffs expressly allege that defendant's duty of reasonable care is based on the common law of negligence and on the foreseeable risk of harm arising from defendant's bad faith disregard of ongoing evidence that Park Capital Management Group was using Region's accounts to steal money that had been entrusted by investors.  *Id.*

---

[3] "Bad faith for purposes of the Uniform Fiduciaries Act "requires something more than mere negligence and can be found where the person accepting a negotiable instrument disregards circumstances that are suggestive of a breach and are sufficiently obvious such that it is in bad faith to remain passive." *O'Neal v. Southwest Mo. Bank*, 118 F.3d 1246, 1251 (8th Cir. 1997); *see also Appley v. West*, 832 F.2d 1021, 1031 (7th Cir. 1987) ("At some point, obvious circumstances become so cogent that it is 'bad faith' to remain passive."); *N.J. Title Ins. Co. v. Caputo,* 748 A.2d 507, 514 (N.J. 2000) ("bad faith denotes a reckless disregard or purposeful obliviousness of the known facts suggesting impropriety by the fiduciary . . . . actual knowledge of and complicity in the fiduciary's misdeeds is not required") (appendix eight); *General Ins. Co. of Amer. v. Commerce Bank of St. Charles,* 505 S.W.2d 454, 457-58 (Mo. App. 1974) ("Evil motive is not the gauge; it is whether it is 'commercially unjustifiable for the [bank] to disregard or refuse to learn facts readily available'") (appendix nine); *Guaranty Bank & Trust v. C & R Dev. Co.*, 260 La. 1176, 1187 (La. 1972) (same) (appendix ten).

7

Significantly, Regions has offered no Tennessee cases in support of its theory that banks have no duties to non-customers. Defendant claims that Tennessee courts have not recognized any duty of care owed by banks to non-customers who are victims of criminal enterprises. That assertion is stunningly inaccurate. As noted above, Judge Haynes and Judge Trauger have found such a duty in this and a highly similar case. And other Tennessee cases indicate that, under circumstances like those in this case, Regions owed a duty of reasonable care to the clients of Park Capital whose money was deposited in Regions' accounts.

First, as noted above, the Legislature has enacted statutes that provide only limited protection to banks from liability to non-customers whose money is stolen from bank accounts by fiduciaries. This legislation reflects a public policy in this state that banks should not be immune from liability when they act in bad faith in ignoring theft and embezzlement.

As observed by the court in *Chambers v. First Trust & Savings Bank*, 1992 Tenn. App. LEXIS 231, *7-8 (1992) (appendix eleven), this statute is not a significant change from pre-existing Tennessee law. In that case, the court stated that a bank has no duty to supervise withdrawals from a fiduciary account "unless circumstances are such to put the bank on notice that the fiduciary is misappropriating or intends to misappropriate funds." *Id.* (emphasis added). On the facts before it, the court held the bank liable to non-customers.

In another case in the area of banking, the Western District of Tennessee held that a bank had a duty of care to a non-customer whose identity was stolen by another party who opened an account at the bank. *Wolfe v. MBNA Am. Bank*, 485 F. Supp. 2d 874 (W.D. Tenn. 2007). In that case, an identity theft victim sued the defendant bank alleging negligence and other claims after the bank issued a credit card to an unknown individual in the victim's name, provided credit to the wrongdoer, and then issued bad credit reports on the victim. Because the injury resulting from the negligent issuance of a credit card was foreseeable, the court found that under

Tennessee negligence law, the bank had a duty to verify the authenticity of a credit card application.

Also relevant is the decision in *Lawyers Title Ins. Corp. v. United American Bank*, 21 F. Supp. 2d 785, 797-78 (W.D. Tenn. 1998). On facts analogous to those here, the court held that plaintiffs had sufficiently alleged that a bank knowingly aided and abetted an attorney who was using funds of clients, who were not bank customers, to pay personal debts.

Moreover, the general analysis utilized by the Tennessee Supreme Court in determining the existence of a duty of reasonable care leads to the conclusion that there is such a duty under the facts of this case. The Court's most recent analysis of the concept of duty was in *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359 (Tenn. 2009), in which it noted that in general, one has a duty "to others to refrain from engaging in misfeasance, affirmative acts that a reasonable person should recognize as involving an unreasonable risk of causing an invasion of an interest of another or acts which involve an unreasonable risk of harm to another." *Id.* at 364, *citing* Restatement (Second) of Torts §§ 284, 302 (1965).

The Court noted that there was a traditional reluctance to impose liability for nonfeasance, as opposed to an act risking harm to others. *Id.* The Court added, however, that "as a means of mitigating the harshness of the common law rule, exceptions have been created for circumstances in which the defendant has a special relationship with either the individual who is the source of the danger **or** the person who is at risk." *Id.* (emphasis added).

It is also important to note that the line between active misfeasance and nonfeasance is frequently unclear and difficult to draw. In *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 356-57 (Tenn. 2008), the Court cautioned that it is important not to assume that a negligent act must be characterized as an affirmative act for a duty to exist, and "that negligence may consist of an act or omission creating an unreasonable risk." The Court emphasized that "even

9

though the specific negligent act may constitute an omission, the entirety of the conduct may still be misfeasance that created a risk of harm." *Id.* (citations omitted).

In this case, plaintiffs contend that Regions' entire course of conduct – its providing and profiting from the provision of banking services while recklessly and continuously failing to comply with anti-money laundering and account monitoring laws that banks are required to follow – constituted <u>active</u> misfeasance that created an unreasonable risk of harm. This case is not conceptually different from the failure to brake in a crosswalk illustration offered by Justice Koch in *Satterfield,* 266 S.W.3d at 357:

> A classic illustration of this point is the example of a driver who fails to apply his or her brakes to avoid hitting a pedestrian walking in a crosswalk. Even though the driver's negligent act -- failing to apply the brakes -- is an omission, the "driver's careless failure to apply the brakes is negligent driving, not negligent failure to rescue."

For a number of years, Regions failed to apply the brakes required by law to money launderers and Ponzi scheme operators, and plaintiffs were run over as a result.

Furthermore, affirmative acts on the part of Regions facilitated the fraud of Park Capital, such as defendant's allowing Park Capital to frequently overdraft its account and giving Park Capital cash from accounts it knew contained money that belonged to Park Capital's clients. *Cf. West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005) (convenience store had duty to other motorists on the road by virtue of actions of its employee in helping an intoxicated motorist to pump gasoline).

Liability for misfeasance is not confined to cases of special relationships. To the contrary, "liability for misfeasance may extend to any person to whom harm may reasonably be anticipated as a result of the defendant's conduct." *Satterfield*, 266 S.W.3d at 364.

Even in cases concerning only the failure to act, the Tennessee Supreme Court has frequently recognized that a defendant owes a duty of care to a third party with whom it had no

dealings, even in cases involving criminal or tortious acts of others. *See, e.g Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359 (Tenn. 2009) (housing authority had  duty to take reasonable steps to protect tenants in the project from criminal violence); *Satterfield v. Breeding Insulation Co*., 266 S.W.3d 347, 356-57 (Tenn. 2008) (family member of an employee who was exposed to asbestos at his workplace fell within a class of individuals whom an employer could have reasonably foreseen would be harmed); *Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005) (homeowner had duty to exercise reasonable control over guests at a party, one of whom had too much to drink and ultimately caused a bad car wreck);  *Bradshaw v. Daniel*, 854 S.W.2d 865 (Tenn. 1993) (the existence of the physician-patient relationship is sufficient to impose an affirmative duty to warn identifiable third persons in the patient's immediate family against foreseeable risks emanating from a patient's illness).

As the Court is aware, in order to determine whether a duty is owed in a particular circumstance, courts must first determine if a risk was foreseeable, and, if so, must then apply a balancing test based upon principles of fairness to identify whether the foreseeability of the harm outweighed the burden of the duty imposed.  *Giggers v. Memphis Hous. Auth*., 277 S.W.3d 359, 365 (Tenn. 2009).

In *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 820 (Tenn. 2008), Court held that the foreseeability of the harm is a key factor in the duty equation and that "a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable."

If there is a finding of a foreseeable risk of harm, "courts must engage in "an analysis of the relevant public policy considerations," to determine whether a duty enforceable in tort must be imposed." *Giggers*, 277 S.W. 3d at 366 (citations omitted).  The following non-exclusive factors have been considered:

11

> [T]he foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Id.* (citations omitted).[4]

In this case, plaintiffs respectfully submit that the risk of harm to plaintiffs and others posed by Regions' reckless course of conduct was clearly foreseeable. As discussed above, Park Capital was engaged in a course of business that was completely incompatible with a legitimate business enterprise and was engaged in actions that were obviously unlawful. When a fiduciary uses funds held in trust for its clients for personal and business expenditures, it is not merely foreseeable, but certain, that wrongdoing and harm are occurring.

In addition, the significance of the protective actions that Regions should have taken is indisputable since these actions have been mandated by Congress. Indeed, the U.S. government determined that Regions' failure to comply with these laws rose to the level of <u>criminal</u> misconduct. Consolidated Complaint, ¶ 48.

Furthermore, the potential gravity of the foreseeable harm clearly outweighed the burden to Regions of taking reasonable protective measures. First, defendant was aware that Park Capital was depositing and withdrawing millions of dollars of client funds, a considerable amount of it in cash. Second, the bank was <u>legally</u> <u>required</u> to take reasonable steps to prevent the specific type of misconduct that occurred here. Thus, there was no "additional" burden to the bank in acting reasonably, rather than recklessly.

---

[4] If the trial court determines that the foreseeability of the harm and its particular gravity outweigh the burden of taking reasonable protective measures, the question of duty and of whether defendants have breached that duty . . . is one for the jury to determine based upon proof presented at trial." *Giggers*, 277 S.W. 3d at 366.

In addition, Tennessee cases have also held that a duty to protect others may exist if the defendant is in a special relationship with the person who caused the damage or the person who is foreseeably at risk. *Biscan v. Brown*, 160 S.W.3d 462, 478-79. In this case, plaintiffs have alleged that Regions had a special relationship with Park Capital because (1) the activity in Park Capital's accounts was highly suspicious, (2) Regions had a duty to monitor its accounts to uncover improper activities such as those that occurred here, (3) defendant knew that Park Capital's accounts contained funds held in trust for clients, and (4) defendant knew that it had not been monitoring accounts for suspicious activity as required in compliance with federal law. The jury could easily conclude that if Park Capital was making improper withdrawals from its clients' accounts, then clients such as plaintiffs were foreseeably at risk.

Although plaintiffs have asserted a common law negligence claim, the Court can and should consider federal law in determining the scope of defendant's duty and the sufficiency of its efforts to prevent its accounts from being used by money launderers and Ponzi scheme operations. *See, e.g., Hale v. Ostrow*, 166 S.W.3d 713, 717 (Tenn. 2005) (considering ordinance as a factor in resolving duty issue); *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 34-35 (Tenn. 1988) (considering OSHA regulations in negligence case).

It is irrelevant to plaintiffs' negligence claim that there is no private right of action under the Bank Secrecy Act and the Patriot Act for the simple reason that plaintiffs have not asserted a cause of action based on these laws.[5] There is a critical difference between giving consideration to statutes or regulations in a negligence case and the recognition of a private right of action arising from a statute or regulation.

---

[5] Similarly, plaintiffs have clearly <u>not</u> asserted that Regions breached contractual duties to plaintiffs by failing to file Suspicious Activity Reports. Defendant's suggestion to that effect is baffling.

As noted in *As You Sow v. AIG Fin. Advisors, Inc.,* 584 F. Supp. 2d 1034, 1047 (M.D. Tenn. 2008)*,* "a common law duty may be based on a statute even if the statute does not create an independent private right of action under the statute." This decision cited *Draper v. Westerfield*, 181 S.W.2d 283 (Tenn. 2005), which demonstrates that a common law duty may be based on a statutory provision even if there is no private right of action under the statute. The Tennessee Supreme Court used the statute in question as a basis for recognizing a new common law duty. [6]

Also, in *As You Sow,* the Court cited numerous authorities for the proposition that statutes and regulations may be relevant in determining the appropriate standard of care in a negligence case. *Id*. at 1048-49. In arguing that federal law may not establish any standard of care because there is no private right of action, Regions displays confusion about these fundamental principles of negligence law.

The only Tennessee case cited by Regions in support of its "no duty" argument is *Nat'l Bank of Tenn. v. McDonald*, 2006 WL 3147390 (E.D. Tenn., October. 31, 2006), a decision both irrelevant and mischaracterized by defendant. Regions claims this decision, and the *First State Bank* case cited therein, hold that Tennessee courts "typically bar even a negligence claim by a bank customer." Defendant's memorandum at 7. But the passage cited by Regions addressed the circumstances under which a bank owes a fiduciary duty, not a duty of reasonable care. As Regions is well aware, it is not difficult to find cases holding that a bank was negligent in its dealings with a customer.

---

[6] The plaintiffs in *Draper* asserted common law negligence claims against a physician for violating statutory reporting duties in Tennessee child abuse legislation. The court rejected as irrelevant defendant's argument that there was no private right of action under the statute, noting that plaintiff was not asserting a claim under the statute. It is noteworthy that there was no pre-existing common law duty in Tennessee to report suspected child abuse. *See Ham v. Hospital of Morristown, Inc.,* 917 F. Supp. 531, 534 (E.D. Tenn. 1995).

14

Finally, it is telling that in its five-page section entitled "Tennessee Law," Regions discusses only <u>one</u> Tennessee case, a case relied on by plaintiffs that defendant attempts to explain away.

### C.  <u>Case Law From Other Jurisdictions</u>

Given the Tennessee statutory and case law supporting plaintiffs' negligence claim, the Court need not and should not consult non-controlling decisions from other jurisdictions. Nevertheless, it should be noted that Regions has painted an inaccurate and incorrect picture of such case law.  There is no uniform rule in other jurisdictions holding that banks never owe a duty of reasonable care to non-customers.  To the contrary, as stated by the court in *Fine v. Sovereign Bank*, 634 F. Supp. 2d 126, 136 (D. Mass. 2008):

> The rule that banks owe no duty to third parties is not monolithic. New York explicitly recognizes a negligence suit by third parties that does not sound in misrepresentation. *See Lerner*, 459 F.3d at 285-86; *Home Sav. of Am. v. Amoros*, 233 A.D.2d 35, 39, 661 N.Y.S.2d 635 (N.Y.A.D. 1997). And many other jurisdictions, while following the general rule that a bank owes no duty to a third-party non-customer, have declined to foreclose the possibility of a duty where the bank has actual knowledge that its depositor is breaching a fiduciary duty owed to a third person. *See, e.g., Volpe v. Fleet Nat. Bank*, 710 A.2d 661, 664-65 (R.I. 1998) (stating and following general rule, but noting that "extraordinary circumstances" might create liability, and further noting that the case at bar failed to present facts to demonstrate the bank's knowledge of a forgery).

Thus, in a holding directly applicable to this case, the court declined to dismiss negligence claims by Ponzi scheme victims alleging that the defendant bank knew the wrongdoer was violating his duty to his clients by withdrawing funds from an account (in the wrongdoer's name) for his own purposes.  634 F. Supp. 2d at 136-37.

Also directly on point is the above-cited decision in *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273 (2d Cir. 2006), in which the Second Circuit overturned the trial court's dismissal of a negligence action by non-customers against three banks.  The plaintiffs, who had been defrauded

by a lawyer, alleged that the banks negligently failed to report his overdrafts to the state bar as required by New York law. Plaintiffs further alleged that once the lawyer began to overdraw his accounts repeatedly, the bank had a duty to make reasonable inquiries and safeguard trust funds from the lawyer's misappropriation.

As in the present case, the lawyer deposited plaintiffs' funds in accounts in his own name to which he had unrestricted access without his clients' knowledge or consent, *i.e.*, the plaintiffs were not bank customers. Although noting that a bank generally has no duty to monitor fiduciary accounts to prevent misappropriation, the court stated that a bank may become liable if it receives notice that a diversion is taking place. *Id*. at 287-88. The court further held that it was not necessary that the accounts were designated as trust accounts because plaintiffs alleged that the banks had knowledge that the accounts were intended to hold client funds in trust (as also alleged in this case). *Id*. at 289.

The court further noted that facts sufficient to cause a reasonably prudent person to suspect that trust funds are being misappropriated will trigger a "duty of inquiry" and a duty to "endeavor to prevent a diversion." *Id*. at 287-88. The court held that once the attorney began repeatedly to overdraw accounts containing client funds, the bank had a duty to make reasonable inquiries and safeguard the trust fund from misappropriation.[7] The bank's failure to do so "would qualify as the proximate cause of the clients' losses." *Id.* at 289-90.

Also on point is the decision in *Wuliger v. Liberty Bank, N.A.*, 2004 U.S. Dist. LEXIS 27353 (N.D. Ohio, Mar. 4, 2004) (appendix twelve), in which a bankruptcy trustee asserted, on behalf of victims of a viatical scam, that defendant deliberately ignored Bank Secrecy Act

---

[7] The court noted that 'Among the various indicia of fiduciary misappropriation, surely account insufficiency must rank very highly, revealing as it does a telling disparity between entrusted funds and fiduciary expenditures which, in turn, may be and often is indicative of trust withdrawals for nontrust purposes." *Id.* at 288, *citing Home Savings of American v. Amoros*, 233 A.D.2d 35, 661 N.Y.S.2d 635 (1st Dep't 1997).

16

regulations and failed to perform due diligence, all of which would have put them on notice of the wrongdoer's wrongful conversion of money held in trust. Given the magnitude of suspicious transactions, the court held that plaintiff had stated a viable negligence claim.[8]

Also relevant is the decision in *Jairett v. First Montauk Sec. Corp.*, 153 F. Supp. 2d 562 (E.D. Pa. 2001), in which non-bank customers defrauded by a con man sought to impose liability on a bank at which the wrongdoer had deposited and then misappropriated plaintiffs' funds. The court denied the bank's motion to dismiss based on plaintiffs' allegations that they had a fiduciary relationship with the wrongdoer and that the bank was aware that the funds it received were given to the wrongdoer in trust. *Id*. at 567-69.

Yet another on-point decision recognizing a bank's duty to a non-customer is *N.J. Title Ins. Co. v. Caputo,* 748 A.2d 507, 514 (N.J. 2000) (appendix thirteen). Plaintiff title company sued a bank that allowed an attorney to which plaintiff had entrusted funds to write numerous checks to himself from the attorney's trust account. Plaintiff alleged claims based on negligence and bad faith under New Jersey's Uniform Fiduciary Law. Finding that the facts would support a finding of bad faith, the New Jersey Supreme Court reversed the summary dismissal by the courts below.[9]

---

[8]  In a subsequent ruling, the court held that plaintiff's allegations met the standard of "bad faith" under the Uniform Fiduciaries Act. *Wuliger v. Keybank Nat'l Ass'n*, 2006 U.S. Dist. LEXIS 315 (N.D. Ohio, Jan. 6, 2006) (appendix 5).

[9] There are other decisions in which courts in other states have held that banks have duties to non-customers under a variety of circumstances. *See, e.g., Nangle v. Lauer*, 98 F.3d 378 (8th Cir. 1996) (limited partners stated viable claim against bank that made personal loan to general partners and took a security interest in partnership property to secure the personal loan); *Murray v. Bank of Amer., N.A.*, 354 S.C. 337, 580 S.E. 2d 194, 198 (S.C. Ct. App. 2003) (finding bank had duty of care to non-customer whose identity theft was stolen by wrongdoer who opened account with the bank) (appendix fourteen); *Wymore State Bank v. Johnson Int'l Co.*, 873 F.2d 1082, 1087 (8th Cir. 1989) (holding that a non-customer drawer has standing to sue depositary bank for negligence); *Progressive Casualty Ins. Co. v.*

## D. **Defendants' Authority Does Not Justify The Reversal Of Judge Haynes' Prior Ruling**

The non-Tennessee cases cited by defendant are either mischaracterized, no longer good law, or irreconcilable with the controlling Tennessee authority discussed above.

For example, Regions has cited several older New York cases that are inconsistent with the subsequent, New York law decision in *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 287-88 (2d Cir. 2006), which held that a bank may become liable to non-customers if it receives notice that a diversion is taking place. The decision in *Eisenberg v. Wachovia Bank*, 301 F.3d 220 (4th Cir. 2002), stating that New Jersey did not recognize any bank duties to a non-customer was issued two years after the above-cited decision in *N.J. Title Ins. Co. v. Caputo*, *supra,* in which the New Jersey Supreme Court recognized a duty to a non-customer in a case similar to the present action. Similarly, defendant inappropriately relies on the 1996 decision in *United Jersey Bank,* 201 B.R. 644 (S.D.N.Y., Bkr. 1996), a decision under New Jersey law that is inconsistent with the subsequent decision in *N.J. Title Ins. Co. v. Caputo*, *supra.*

Also, several cases defendant cites for it's no duty to non-customer rule actually acknowledge that under certain circumstances a bank may owe duties to non-customers. In *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 232 (5th Cir 2010), the court noted that "New York courts have recognized that a bank may be held liable for its customer's misappropriation where (1) there is a fiduciary relationship between the customer and the non- customer, (2) the

---

*PNC Bank, N.A.*, 73 F. Supp. 2d 485, 489 (E.D. Pa. 1999) (refusing to grant a defendant bank's motion to dismiss non-customer drawer's negligence suit).

18

bank knows or ought to know of the fiduciary relationship, and (3) the bank has "actual knowledge or notice that a diversion is to occur or is ongoing."[10]

Likewise, *Dale v. Ala Acquisitions*, 2008 WL 918138 (S.D. Miss., Mar. 31, 2008), spoke of a "general rule," not an inflexible rule, and noted that "where there are facts indicating misappropriation, a bank may be liable whether by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed." *Id.* at 5. *Software Design v. Hoefer & Arnett,* 49 Cal. App. 4th 472 (Cal. App. 1996), cited in support of Regions' inflexible, no duty position, actually states that "absent extraordinary and specific facts, a bank does not owe a duty of care to a non-customer. *Id.* at 479 (emphasis added). Similarly, *Condor v. Union Planters Bank*, 384 F.3d 397 (7th Cir. 2004), cited for the proposition that a bank does not owe a duty of care to a non-customer, actually states that many courts have held that banks do not have a "general duty of care" to non-customers.[11]

Such formulations may be the only way to reconcile the apparently disparate cases around the country. There is no general duty of care to non-customers, but in circumstances of reckless misconduct in the face of significant warnings and foreseeable harm, the courts have and will impose on banks a duty of reasonable care under the specific facts at hand. Plaintiffs respectfully reiterate, however, that because their negligence claims can be resolved by reference

---

[10] Notably, the court held that with respect to the second element, a plaintiff need only demonstrate that the bank *ought to have known* given the facts before it . . . . meaning that the defendant must be chargeable with the knowledge by having access to facts sufficient to cause a reasonably prudent person to suspect" that a fiduciary relationship underlies the funds and by failing to inquire as to the status of the funds." *Id.* at 233. Plaintiffs have certainly made such allegations in the present case.

[11] Other cases cited by Regions arose from inapplicable facts. *Fargis v. American Exp. Travel Related Services, Inc.,* No. 1:07-1507-MBS, 2009 WL 102537, (D.S.C. Jan. 12, 2009), and *Robinson v. Equifax Information Servs.,* No. CV-040229-RP, 2005 WL 1712479, *9 (S.D. Ala. Jul. 22, 2005), were lawsuits against credit card companies, not banks that ignored a multi-year course of red flags indicating embezzlement.

to controlling Tennessee law, it is unnecessary and inappropriate to decide defendant's motion by attempting to determine what case law from other states seems most persuasive.

Finally, it's important to note that "whether a duty exists depends on a careful scrutiny of all the facts and may involve questions of fact that must be decided by the jury." *As You Sow v. AIG Fin. Advisors, Inc.,* 584 F. Supp. 2d 1034, 1048 (M.D. Tenn. 2008), *citing Kelley v. Middle Tenn. Emergency Physicians,* 133 S.W.3d 587, 597 (Tenn. 2005). The facts in this case are quite complex. Also, questions such as the magnitude of the red flags ignored by Regions, the foreseeability of harm, and the burden to defendant in taking steps to prevent theft will turn in part on expert proof.

Plaintiffs believe that they have alleged facts sufficient to impose a duty of reasonable care on Regions. The jury may fairly conclude that defendant did not exercise reasonable care and acted in bad faith in this case. In any event, however, plaintiffs respectfully submit that it would be premature to determine that defendants owed no duties to plaintiffs until the facts are fully before the Court.

### E. Plaintiffs' Have Sufficiently Pled Recklessness And Causation

Clearly, plaintiffs have sufficiently pled facts supporting the existence of a duty, breach, and causation. *See* Consolidated Complaint, ¶¶ 29-37, 39-47, 50-67, and Counts I and IV.

Defendant cites two cases in support of its theory that plaintiffs have not alleged proximate causation. The first decision – *In re Agape Litigation*, 773 F. Supp. 2d 298 (E.D.N.Y. 2011), addressed only aiding and abetting torts not at issue in this case. In a ruling of no relevance to this case, the court made the unremarkable finding that because plaintiffs had failed to state legally sufficient claims that defendant had knowingly assisted fraud, then the bank's

"conventional banking transactions" could not be deemed the proximate cause of the plaintiffs' injuries.  *Id.* at 325.

Significantly, however, the appellate court of the circuit in which the *In re Agape Litigation* was filed has held that factual allegations much like those in this case can support a finding of proximate cause.  In *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273 (2d Cir. 2006), the Second Circuit overturned the trial court's dismissal of a negligence action by non-customers against three banks.  The plaintiffs, whose money was stolen by an attorney from bank accounts intended to hold client funds, alleged that once the lawyer began to overdraw his accounts repeatedly, the bank had a duty to make reasonable inquiries and safeguard trust funds from the lawyer's misappropriation.

The court stated a bank may become liable if it receives notice that a diversion is taking place and that it was not necessary that the accounts were designated as trust accounts because plaintiffs alleged that the banks had knowledge that the accounts were intended to hold client funds in trust (as alleged in this case).  *Id*. at 287-289.

The court further noted that facts sufficient to cause a reasonably prudent person to suspect that trust funds are being misappropriated will trigger a "duty of inquiry" and a duty to "endeavor to prevent a diversion." *Id*. at 287-88.  The court held that once the attorney began repeatedly to overdraw accounts containing client funds, the bank had a duty to make reasonable inquiries and safeguard the trust fund from misappropriation.[12]  The court concluded that the bank's failure to do so "**would qualify as the proximate cause of the clients' losses**." *Id.* at 289-90.

---

[12]   The court noted that 'Among the various indicia of fiduciary misappropriation, surely account insufficiency must rank very highly, revealing as it does a telling disparity between entrusted funds and fiduciary expenditures which, in turn, may be and often is indicative of trust withdrawals for nontrust purposes." *Id.* at 288, *citing Home Savings of American v. Amoros,* 233 A.D.2d 35, 661 N.Y.S.2d 635 (1st Dep't 1997).

The second decision cited by Regions - *E.F. Hutton Mortg. Corp. v. Equitable Bank, N.A.,* 678 F. Supp. 567 (D. Md. 1988) – could hardly be less relevant, factually or legally. In that case, a mortgage company and a bank had separately done business with an entity engaged in fraud. Both parties accused each other of knowingly assisting the fraud. At the summary judgment stage, the court found no evidence to support the allegations of either party. Furthermore, unlike the present case, no money of the plaintiff was stolen from accounts with the defendant bank.

As the Court is aware, proximate cause is a question for the jury unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005); *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994). At this stage, plaintiffs' complaint sufficiently alleges facts from which a jury could reasonably find that defendant's misconduct was a significant factor in plaintiffs' ultimate losses.

Respectfully defendant's argument that plaintiffs have failed to plead recklessness simply ignores plaintiffs' complaint. Plaintiffs have alleged recklessness, bad faith and more. Judge Haynes correctly concluded that plaintiffs had pled a legally sufficient case with allegations that included the following:

- Over an extended period of years, defendant **recklessly** ignored its duty to monitor accounts to prevent money laundering and suspicious activities;

- Federal authorities charged in late 2004 that defendant had "**willfully**" failed to comply with federal anti-money laundering laws and repeatedly allowed the bank's accounts to be "used to further Ponzi schemes, embezzlement, and other fraudulent misconduct";

- Even after these federal charges were asserted Regions continued to do business without correcting the deficiencies;

- Regions knew that Park Capital was depositing funds of clients that were held in trust for the benefit of clients;

22

- Regions nevertheless allowed Park Capital to withdraw and transfer such funds for its own benefit under clearly suspicious circumstances, including the commingling of funds held in trust, the frequent withdrawal of cash in amounts calculated to avoid federal reporting obligations, and the use of client funds for personal use and to pay business expenses of Park Capital;

- Multiple overdrafts occurred in accounts that held clients' funds;

- Park Capital's use of Regions' bank accounts was not consistent with the conduct of a legitimate business enterprise; and

- Defendant acted with **severe recklessness** and in **willful and/or conscious disregard of its statutory and common law obligations and the rights of others**.

Consolidated Complaint at ¶¶ 47-49, 52-67, 70. Also, in the *John L. McLemore, Trustee* case, *supra,* Judge Trauger held that allegations highly similar to those here sufficiently asserted bad faith. *Id.* at 14.

Plaintiffs respectfully submit that Judge Haynes correctly held that a reasonable jury could conclude, based on the facts alleged, that Regions acted in the bad faith manner that the Tennessee Legislature has acknowledged may give rise to the liability to a non-customer. Indeed, the facts alleged by plaintiffs support an assertion that Regions had actual knowledge of wrongdoing. *See Lawyers Title Ins. Corp. v. United American Bank*, 21 F. Supp. 2d 785, 797-78 (W.D. Tenn. 1998) (holding on similar facts that plaintiffs had sufficiently alleged that a bank knowingly aided and abetted an attorney who was using client funds to pay personal debts).

## IV. DEFENDANT'S ARGUMENTS CONCERNING CONSUMER PROTECTION ACT CLAIM ARE WITHOUT MERIT

In its original motion to dismiss, defendant made a number of meritless arguments concerning plaintiffs' Tennessee Consumer Protection Act ("TCPA") claim. Those arguments were rejected by Judge Haynes. Defendant now offer two new arguments that are equally without merit.

23

First, defendant makes the throwaway argument that plaintiffs have failed to plead their TCPA claim with particularity. Clearly, plaintiffs' complaint sets forth in detail defendants' multi-year failure to comply with federal law and industry standards and its willful disregard of a host of clear signals indicating that Park Capital was stealing its customers' money out of Regions' accounts. This course of misconduct, from which Regions profited, easily constitutes unfair trade practices that violated the TCPA.

Furthermore, since defendant failed to assert its Rule 9(b) argument in its initial motion to dismiss, the argument should be deemed to be waived. And obviously, since defendant was able to file comprehensive answers to plaintiffs' virtually identical, prior complaints, the primary purpose of Rule 9(b) has been satisfied. Numerous courts have held that motions for a more definite statement are disfavored and should be granted only when a pleading is so unintelligible that the movement cannot draft a responsive pleading. *See, e.g., MacNeil Auto. Prods. v. Cannon Auto. Ltd*., 715 F. Supp. 2d 786, 790 (N.D. Ill. 2010); *Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing, Inc*., 211 F.R.D. 71, 76 (E.D.N.Y. 2002); *Frazier v. Southeastern Pennsylvania Transp. Auth*., 868 F. Supp. 757, 763 (E.D. Pa. 1994); *Communities for Equity v. Michigan High School Athletic Ass'n*, 26 F.Supp.2d 1001, 1009 n. 9 (W.D. Mich. 1998).

Defendant next argues that plaintiffs failed to file their TCPA claims within one year of their discovery. The obvious flaw in this argument is that there is nothing in the record indicating that plaintiffs knew or should have known that they had legal claims against Regions Bank more than a year before this litigation commenced. To the contrary, plaintiffs have alleged that they did not become aware of the relationship between Park Capital Management Group and Regions Bank until 2009 or latter. Consolidated Complaint, ¶ 38.

Defendant's position incorrectly assumes that the statute of limitations began to run on plaintiffs' TCPA claim when they learned that Michael Park had stolen their money. As defendant is well aware, that is not the law.

Under the "discovery rule" applicable in tort actions, the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990), *citing McCroskey v. Bryant* Air Conditioning Co., 524 S.W.2d 487, 491 (Tenn. 1975).

Furthermore, the plaintiff must not only have become aware of injury; he or she must also have notice that the injury was the result of the defendant's misconduct. The statute of limitations does not begin to run until the claimant is aware of the facts "sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994). Thus, before a case may be dismissed on statute of limitations grounds, the defendant must show that a plaintiff had "not only an awareness of the injury, but also the tortious origin or wrongful nature of that injury." *Shadrick v. Coker*, 963 S.W.2d 726, 734 (Tenn. 1998).

There is nothing in the pleadings that establishes that any plaintiff knew or should have known, prior to August 20, 2004, that the plaintiff had suffered injury as a result of wrongdoing on Regions' part. Indeed, Regions declines even to suggest how plaintiffs could reasonably have known of defendant's misconduct in its dealings with Park Capital. Also, it is baffling why defendant argues that plaintiffs should have identified unfair or deceptive acts that occurred after September 29, 2009, the date this litigation commenced. The statute of limitations argument is meritless.

## V.   THERE IS NO BASIS FOR DISMISSING
## PLAINTIFFS' UNJUST ENRICHMENT CLAIM

Under the doctrine of unjust enrichment, "liability can be created where one person receives a benefit at the expense of another and it is unjust or inequitable for him to retain this benefit." *Jaffe v. Bolton,* 817 S.W.2d 19, 26 (Tenn. App. 1991).  The doctrine is premised on the principle that a person receiving a benefit that it is unjust for him to retain ought to make restitution.  *Browder v. Hite*, 602 S.W.2d 489, 491  (Tenn. App. 1980).[13]

A plaintiff need not have had contractual dealings with a defendant to recover under a claim of unjust enrichment.  *Freeman Industries v. Eastman Chemical Co.,* 172 S.W. 3d 512, 525 (Tenn. 2005); *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966).  Similarly, the law imposes a duty to make restitution without regard to the intent of the person benefited. *Browder v. Hite*, 602 S.W.2d 489, 492 (Tenn. App. 1980).

Regions incorrectly argues that plaintiffs have failed to allege that defendant was benefited by the transactions at issue in this case.  Plaintiffs have alleged that Regions received significant fees as a result of its inappropriate transactions with Park Capital and, more specifically, that defendant received approximately $200,000 from a deposit made by plaintiff James Duff.  Consolidated Complaint,  ¶¶ 36-37, 72.

It is of no legal consequence that plaintiffs' money reached defendants indirectly, rather than directly.  *Freeman Industries v. Eastman Chemical Co.,* 172 S.W. 3d 512 (Tenn. 2005) (receipt of an indirect benefit may be the subject of an unjust enrichment claim); *see also First*

---

[13] Unjust enrichment claims present jury issues.  *See, e.g., First National of North America, LLC v. Marks*, 2004 Tenn. App. Lexis 325 (Tenn. App., May 18, 2004), *appeal denied* Nov. 15, 2004 (plaintiffs' legal appendix at tab 16).  Furthermore, "unjust enrichment requires a factual examination of the circumstances and of the conduct of the parties, which is not a task for the appellate court, but for the trier of fact."  66 Am. Jur. 2d, Restitution and Implied Contracts, § 9, p. 6.

*National of North America, LLC v. Marks*, 2004 Tenn. App. Lexis 325 (Tenn. App., May 18, 2004), *appeal denied* Nov. 15, 2004 (appendix fifteen) (unjust enrichment award allowed despite facts that the funds went from plaintiff to defendant via a third-party and the transactions between the plaintiff and the defrauding party were separate from the transactions between defendant and the defrauding party).

One of the decisions cited with approval by the Tennessee Supreme Court in *Freeman Industries, supra,* is strongly supportive of plaintiffs' claims. In *Hirsch v. Bank of America.*, 107 Cal. App. 4th 708, 132 Cal. Rptr.2d 220, 229 (Cal. App. 2003) (appendix sixteen), the court ruled that a bank that charged excessive fees to a title company was potentially liable for unjust enrichment in a suit by title company customers whose money was used to pay the excessive fees. This factual scenario is not materially distinguishable from the situation in this case.

Plaintiffs need not trace precisely the flow of every dollar from themselves to defendants. *See, e.g., Fidelity National Ins. Co. v. Intercounty National Title Ins. Co.*, 2004 U.S. Dist. Lexis 7349, * 16 (N.D. Ill. 2004) (appendix seventeen). In that case, the court rejected defendants' argument that the plaintiff had to "trace every dollar owed, " noting that that conclusion is particularly true in a case in which "funds were deposited into a common escrow account and taken out later." *Id.*[14]

Finally, Judge Haynes correctly rejected Regions' disingenuous argument that plaintiffs failed to "exhaust their remedies against Mr. Park." Park is bankrupt and is now spending a number of non-wage-earning years in prison. *See Consolidated Complaint* at ¶ 24. A plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the

---

[14] In a subsequent appeal of the *Fidelity* case, the Seventh Circuit noted that even if the defendant was not a party to fraud, it could be held liable under the doctrine of unjust enrichment if it received the proceeds of fraud. *Fidelity National Title Ins. Co. v. Intercounty National Title Ins. Co.*, 412 F.3d 745, 748 (7th Cir. 2005).

pursuit of the remedies would be futile). *Freeman Industries v. Eastman Chemical Co.,* 172 S.W. 3d 512, 526 (Tenn. 2005). The fact that plaintiffs may possibly recoup a small part of their investment in the Park bankruptcy is no basis for dismissing plaintiffs' unjust enrichment claims. The jury can determine the extent to which those circumstances should affect the unjust enrichment award.

## VI.  CONCLUSION

Judge Haynes correctly resolved Regions' motion to dismiss the first time. Defendant has failed to establish as a matter of law that any of plaintiffs' claims should be dismissed. Plaintiffs respectfully submit that defendant's motion should be denied in its entirety.


Respectfully submitted,


s/ H. Naill Falls, Jr.
 H. Naill Falls, Jr. (BPR #6787)
 John B. Veach III (BPR #8994)
 FALLS  & VEACH
 1143 Sewanee Rd.
 Nashville, TN 37220
 (615) 242-1800
 nf@fallsveach.com

 s/Kenneth R. Jones, Jr.
 Kenneth R. Jones, Jr. (BPR #7278)
 JONES HAWKINS & FARMER, PLC
 150 Fourth Avenue North, Suite 1820
 Nashville, TN 37219
 (615) 726-0050
 kjones@joneshawkinsfarmer.com

 Attorneys for Plaintiffs

28

## CERTIFICATE OF SERVICE

I certify that on November 28, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. Mail. Parties may access this filing through the court's electronic filing system.


H. Naill Falls Jr.