UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RAYMOND JACKSON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 3:09-cv-00908 |
| | ) | |
| v. | ) | Judge Sharp |
| | ) | |
| REGIONS BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

In 2009, Michael Park and Donna Jones pled guilty to crimes relating to a fraudulent scheme they used to swindle multiple investors of funds totaling over eight million dollars. Before the Court is an action for equitable relief and damages arising out of Regions Bank's ("Defendant") alleged acts in allowing Michael Park, Donna Jones, and Park Capital, Inc. to embezzle and steal funds that Plaintiffs deposited at its bank and its predecessor banks in Middle Tennessee. Plaintiffs assert state common law claims for negligence and recklessness, unjust enrichment, negligent and fraudulent misrepresentation as well as violations of the Tennessee Consumer Protection Act, T.C.A. § 47-18-101 *et seq*.

Pending before the Court are *Regions Bank's Motion for Summary Judgment* and *Regions Bank's Motion for Partial Summary Judgment with Respect to Plaintiff James Duff* (Docket Entry Nos. 105 and 99). The motions have been fully briefed by the parties.

## RELEVANT FACTS

*Facts relevant to all Plaintiffs*

Between 2001 and June 2008, Michael Park ("Park") and his confederate Donna Jones ("Jones") stole over eight million from their friends, family, and others they convinced to

1

"invest" through Park Capital Management Group ("PCMG").[1] Park and Jones stole Plaintiffs' money and that of others, spending it on such items as luxury cars, jewelry, exotic vacations, and expensive meals. While perpetrating his scheme, Park maintained three demand deposit accounts at Union Planters Bank (and then its successor Regions Bank): his business, individual, and joint (marital) checking accounts.[2] Park routinely deposited (either personally or through his agent Jones) into the PCMG business checking account funds he had received from various clients. It was clear from the transactions reflected on the monthly account statements prepared by Regions Bank that Park was regularly withdrawing money for personal, non-business purposes. Such withdrawals included the following:

- Automobiles and auto maintenance: $342,000
- Clothing and jewelry: $122,000
- University school tuition: $24,000
- Golf-related expenses: $88,000
- Swimming pool and construction: $83,000
- Mortgage payments: $110,000
- Restaurant and liquor: $120,000

Each of the Plaintiffs in this case engaged Park and his company, PCMG, to provide investment services. Park and PCMG were engaged, among other things, to provide Plaintiffs with securities advice and to facilitate their purchase of investments. In the course of that business relationship, Plaintiffs advanced funds to Park, which Park was supposed to use to

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket Entry Nos. 130 and 132) and related declarations and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

[2] None of these accounts were opened or designated as fiduciary accounts. Plaintiffs aver, nevertheless, numerous deposits into the Park Capital account made clear that the account held assets entrusted to Park Capital on a fiduciary basis. *See* (Docket Entry No. 130 at ¶ 45).

purchase securities on Plaintiffs' behalf. Unbeknownst to Plaintiffs, at the time they transferred funds to Park, he was perpetrating an investment fraud.

Ultimately, his scheme was discovered in June 2008 by one of his victims.[3] At that time, the brokerage company through which Park worked - First Discount Brokerage ("1DB")[4] - and federal authorities became involved. PCMG was shut down at the end of June 2008. By that time, Park and Jones had dissipated virtually all of the millions of dollars they had obtained from "investors" in the course of their scheme. Park and Jones ultimately pled guilty, respectively, to mail and wire fraud and to money laundering. Both are in federal prison for their crimes.

It was a matter of public record long before July 2008 that Park had a questionable past. For example, years before any Plaintiffs invested with Park, other investors had brought a claim against him for excessive commissions and margin interest on unsuitable trades while working for Edward D. Jones & Company ("Edward Jones"). In mid-1998, Park was discharged by Edward Jones for receiving personal loans from two customers without first receiving the required approval from the firm. Also in 1998, additional investors brought a claim against Park for unsuitable churning and margin interest charges. Eight months later, Park was fined by the Virginia State Corporation Division of Securities for violating a commission rule. By the beginning of the year 2000, Park was discharged by Raymond James Financial for forging a client's signature and violating a company policy. On May 10, 2000, the Ohio Division of

---

[3] Plaintiffs all knew or should have known they were victims of Park's fraudulent scheme no later than July 2008. However, Plaintiffs dispute they knew at that time that the alleged conduct by Regions Bank had caused their losses. (Docket Entry No. 130 at ¶ 55).

[4] 1DB is a registered broker-dealer with the Securities and Exchange Commission ("SEC") and is registered with two self-regulatory organizations, the Financial Industry Regulatory Authority ("FINRA") and NASDAQ Stock Market ("NASDAQ"). FINRA's mission is to protect America's investors by making sure the securities industry operates fairly and honestly. At all times relevant to Plaintiffs' claims, Park was affiliated with 1DB or one of its predecessors as a registered securities representative.

Securities issued a Final Order denying Park's application for a securities salesmen's license, finding him "not of good business repute" under the Ohio administrative code.

To the extent any Plaintiffs believed they had an investment account with 1DB, they were able to review the status of their investments at any time, using the 1DB website. Under FINRA's rules and regulations, 1DB was charged with the duty either to supervise any securities-related activity in which it knew Park was engaged or to prevent him from engaging in that activity.[5] Based on the facts and circumstances known to them while they were supposedly clients of Park, Plaintiffs made decisions regarding subsequent investments and withdrawals from the accounts they believed they had with Park. Plaintiffs did not deliver any investment funds to Park expecting him to purchase securities on their behalf from Regions Bank. The fraudulent scheme perpetrated by Park and Jones through PCMG became public knowledge no later than August 2008.

Plaintiffs Raymond Jackson, Maurgreita Jackson, James Duff[6], Behdad Ahmadi, Scott Bailey, John Bruce, Claudia Bruce, Joseph Cosby, Frank Daws, Patrice Daws, Philip Jones, Tara Jones, Ki Suk Lim, Timothy Manus, Errol Mitchell, Mary Ray, and Traci Peel filed their Complaint in this case on September 29, 2009. Plaintiffs Jose Narcio and Blanca Narcio filed their original Complaint against Regions pertaining to the Park fraud on December 29, 2010, and Plaintiff Martha Stinson filed her Complaint on June 24, 2011. Plaintiff Jerry Matthews followed suit on April 22, 2011. Behdad Ahmadi, Martha Stinson, Ki Suk Lim, Traci Peel were

---

[5] Plaintiffs sought relief against 1DB regarding its failure to properly supervise Park. Plaintiffs settled their claims with 1DB.

[6] In addition to the claims asserted by Plaintiffs, James Duff asserted additional claims of misrepresentation against Defendant.

4

customers of Regions Bank at times relevant to the allegations contained in the Complaint; the other Plaintiffs were not.

*Facts relevant to James Duff*

One of the plaintiffs, James Duff, is unique in that, according to him, he had one instance of direct contact and communication with Regions Bank.[7] In May 2007, Duff, as trustee of a family trust, received a $2 million check from the sale of a family business. He took the check to Park's office for investment, at which time Donna Jones accompanied him to a nearby Regions Bank branch office, where they met a Regions officer. Before endorsing the check and handing it over to Regions Bank and Jones for deposit, Duff asked to confirm that the funds would be deposited in a trust or investment account. According to Duff, Jones and the Regions Officer assured him that the money would be placed in such an account. Duff then endorsed the check and turned it over for deposit. The check was then deposited in Park Capital Management's business checking account, which was overdrawn at the time. Within 30 days, Park and Jones had stolen almost $900,000 of Duff's family trust money, and the remainder was stolen later. (Docket Entry No. 70 at 6-8; Docket Entry No. 201, Duff Aff.).

---

[7] Defendant contends Duff has told two different stories. According to Defendant, "[i]n his affidavit, which [Duff] filed in response to Regions' motion to dismiss, he claims that a Regions employee responded affirmatively to his question [of] whether his third party check . . . would be deposited in a "trust account." At his deposition, however, under examination by adversary counsel, his story was materially different." (Docket Entry No. 104 at 1). Duff counters that his sworn deposition testimony does not directly contradict his affidavit. At his deposition, Duff argues, no one asked him directly whether or not that conversation occurred. (Docket Entry No. 131 at 6-7). Duff's deposition was taken on April 12, 2011 – more than a year after the filing of his affidavit in January 2010. Because the deponent is under no obligation to volunteer information not fairly sought by the questioner during deposition testimony, the Court concludes that Duff's affidavit will be considered. *Aerel, S.R.L. v. PCC Airfoils, L.L.C .,* 448 F.3d 899, 907 (6th Cir. 2006).

5

## ANALYSIS

I.  **Summary Judgment Standard**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000).  The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met.  *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986).  The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial.  If the party does not so respond, summary judgment will be entered if appropriate.  Fed.R. Civ. P. 56(e).  The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    *Regions Bank's Motion for Summary Judgment*

Plaintiffs assert state common law claims of (1) negligence and recklessness and (2) and unjust enrichment, as well as (3) a statutory claim under the Tennessee Consumer Protection Act, arising out of Regions Bank's alleged acts and omissions in allowing Michael Park and Park Capital, Inc., to embezzle and steal funds that Plaintiffs deposited at Regions Bank and its predecessor banks in Middle Tennessee.

### A. Negligence Claims

A negligence action requires evidence proving the following elements: (1) a duty owed by the defendant to the plaintiff; (2) defendant's breach of that duty; (3) injury; (4) causation in fact; and (5) proximate, or legal, cause. *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 771 (Tenn. 2006). Under Tennessee law, a duty is owed to others to refrain from engaging in misfeasance, affirmative acts that a reasonable person should recognize as involving an unreasonable risk of causing an invasion of an interest of another or acts which involve an unreasonable risk of harm to another. *Giggers v. Memphis House. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting Restatement (Second) of Torts §§ 284, 302 (1965)).

Regions Bank contends it is entitled to summary judgment because the bank (1) owed no duty of care to the 17 non-customer Plaintiffs and fulfilled the limited duty owed to the 4 customer Plaintiffs, (2) did not engage in any conduct that breached any duty of care, (3) did not cause any harm to Plaintiffs, and (4) cannot be held liable to Plaintiffs in light of T.C.A. § 35-2-107. (Docket Entry No. 105 at 1-2). Further, Defendant argues, "[a]though Mr. Park presumably owed fiduciary duties to the Plaintiffs, these duties are not transferred or attributed to Regions Bank merely by virtue of such deposits. . . [there is] no evidence that Regions Bank had actual knowledge." (Docket Entry No. 123 at 30).

7

Plaintiffs counter that the underlying facts in this case gave Regions Banks knowledge that the funds deposited into the accounts in question belonged to clients of the bank's customer (Park) and should therefore have been held in trust by the bank customer. As further support for their position, Plaintiffs claim "[n]umerous checks and wire transfers… were deposited into the Park Capital Regions' account bearing notations indicating that they were for the benefit of various Park Capital clients."[8] (Docket Entry No. 129 at 29).

Tennessee has adopted the Uniform Fiduciaries Act ("UFA"), which governs a bank's liability for the actions of a fiduciary depositor. Tennessee's UFA imposes liability upon the depository bank if the factual allegations reflect the bank's actual knowledge of a fiduciary's breach of his duties or if the bank has knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith. Tenn. Code Ann. § 35-2-109. Under Tenn. Code Ann. § 35-2-107, a bank is not liable for a fiduciary's handling of an account unless the bank . . . . pays the check with actual knowledge that the fiduciary is committing a breach of the

---

[8] Plaintiffs' expert, Peter Djinis, provided the following in his Report:

> As set forth in the accompanying Excel chart entitled Regions deposits, there were at least nine checks or wires that the Bank accepted for deposit to Park-related accounts even though they contained multiple payees or restricted notations:
>
> - College America/PCMG; $14,655.18;
> - Park Capital Management Group of further credit to Jane Jackson PB Trust; $275,000;
> - PCMG FBO Wash Stinson; $61,378.24;
> - Account *** 9058 FBO Jerry A. Matthews; $250,000;
> - PCMG FBO Tim Manus; $41,709.03;
> - PCMG Re: Ki Suk Lim; 11,000;
> - FBO Joseph Cosby; $192,251.51; and
> - PCMG FBO Scott Bailey; $41,793.98.

(Docket Entry No. 129-10 at 16, Djinis Report). The Court has reviewed the Report and failed to locate the above-mentioned Excel chart or copies of the checks themselves.

8

fiduciary's obligations as a fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith.

Taken together, these provisions make it clear that a bank is liable to a principal for a fiduciary's illegal withdrawal or transfer of funds if, and only if, the bank had "actual knowledge" that the fiduciary was breaching his or her fiduciary duty or had "knowledge of such facts that its action ... amounts to bad faith." *McLemore v. Regions Bank*, No. 3:08-cv-0021 (M.D. Tenn. March 18, 2010) (citing Tenn. Code Ann. §§ 35–2–107, 35–2–109). Anything less is insufficient to support liability. *Id.*

There are sufficient facts in the record, which demonstrate a fiduciary relationship existed between Plaintiffs and Park. The question for this Court is whether Regions Bank had actual knowledge of that relationship and deliberately ignored such. Summary judgment is appropriate only when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Plaintiffs have presented sufficient evidence to establish genuine issues of material fact as to whether Regions Bank knew whether Park's account was being used in a fiduciary manner, and if it did have knowledge, when it was discovered. Given these factual disputes, Plaintiffs' negligence claim must be decided by a jury.[9]

### B. Unjust Enrichment Claims

In Tennessee, the elements of an unjust enrichment claim are: "1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus. LLC v. Eastman Chem.*

---

[9] Plaintiffs' recklessness claim will also survive summary judgment for the reasons given rise to the Court's ruling on the negligence claim.

9

*Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citing *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 155 (1966)). The underlying principle of the doctrine of unjust enrichment is that a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit. (*Id.*).

Regions Bank contends "the record is devoid of any proof that Plaintiffs conferred any benefit upon [it] and likewise devoid of any proof that Regions Bank enjoyed any benefit conferred by Plaintiffs." (Docket Entry No. 123 at 32). Plaintiffs allege they conferred a benefit on Regions Bank in that it earned a substantial account fees that were assessed against the Park Capital accounts and funds entrusted by Plaintiffs and other clients to Park Capital. (Docket Entry No. 129 at 39).

Given the Court's ruling that there remain genuine issues of material fact regarding Defendants actual knowledge of what it knew and when it knew it, above, Plaintiffs' unjust enrichment claim is sufficient to survive summary judgment.

### C. Tennessee Consumer Protection Act Claims

Finally, Plaintiffs assert a claim that Defendant's conduct constituted unfair and deceptive acts and practices in violation of the Tennessee Consumer Protection Act.

The TCPA is a statute designed to protect Tennessee consumers from unfair and deceptive practices in the course of trade and commerce. Tenn. Code Ann. §§ 47–18–101 to –130 (2012). A plaintiff stating a claim under the TCPA must show two things: "(1) that the defendant engaged in an unfair or deceptive act or practice" and (2) that the plaintiff suffered "an ascertainable loss of money or property" as a result. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (citing Tenn. Code Ann. § 47–18–109(a)(1)).

10

Regions Bank contends the TCPA claim is barred by the statute of limitations. The TCPA provides for a one year statute of limitations. Tenn. Code Ann. § 47–18–110. When a plaintiff alleges a violation of the TCPA, a federal court "must apply the procedural law, including statute of limitations, of the forum state...." *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989). Under Tennessee law, a "cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990); *see also McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975). A plaintiff cannot wait [to file suit] until he or she knows every injurious effect or consequence of the wrong. *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876, 878 n. 1 (Tenn. 1981).

Although it appears clear from the record that the fraudulent scheme perpetrated by Park and Jones through PCMG became public knowledge no later than August 2008, a material dispute exists as to when Plaintiffs themselves discovered the alleged scheme with regions Bank. There is nothing in the record establishing that Plaintiffs knew or should have known of Regions Bank's misconduct more than one year before the filing of their claims. Because there are issues of fact that must be decided by a jury, summary judgment based on the TCPA limitations period is inappropriate at this time.

**III.** *Regions Bank's Motion for Partial Summary Judgment with Respect to Plaintiff James Duff*

In addition to a motion for summary judgment directed at all claims by all Plaintiffs, Regions Bank has filed a motion for partial summary judgment that seeks dismissal of James Duff's fraudulent and negligent misrepresentation claims. Defendant argues that because Duff

11

cannot prove either a material misrepresentation by the Bank or justifiable, reasonable reliance on his part, the motion should be granted. (Docket Entry No. 104 at 6).

### A. Misrepresentation Claims

Under Tennessee law, "[t]o succeed on a claim for negligent misrepresentation, a plaintiff must establish 'that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiff justifiably relied on the information.' " *Walker v. Sunrise Pontiac–GMC Truck, Inc.,* 249 S.W.3d 301, 311 (Tenn. 2008) (quoting *Williams v. Berube & Assocs.,* 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)). In the context of business transactions, a plaintiff must establish the following elements:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
>
> (2) the defendant supplies false information meant to guide others in their business transaction; and
>
> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and
>
> (4) the plaintiff justifiably relies upon the information.

*John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991) (citation omitted). In addition, the false information must "consist of a statement of a material past or present fact." *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982). Consequently, "statements of opinion or intention are not actionable," and "representations concerning future events are not actionable even though they may later prove to be false." *Id.* (citations omitted).

The difference between claims for negligent misrepresentation and intentional misrepresentation (also known as "fraud") is that "[w]ith intentional misrepresentation, it must

12

be established that the defendant made a misrepresentation with kno*w*ledge of its falsity or without regard to its truth or falsity." *Regions Bank v. Lost Cove Cabins & Campgrounds, Inc.*, No. M2009–02389–COA–R3–CV, 2010 WL 4514957, at *7 ((Tenn. Ct. App. Nov. 9, 2010) (citing *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998)). As with claims of intentional misrepresentation, "[j]ustifiable reliance also is a necessary element in a cause of action based upon negligent or fraudulent misrepresentation." *Homestead Group, LLC v. Bank of Tenn.*, 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009) (citation omitted). *See also Williams*, 26 S.W.3d at 645 ("An essential element of any action for fraud, deceit, failure to disclose or negligent or innocent misrepresentations is detrimental reliance on a false promise.") (citations omitted).

Plaintiffs have come forward with sufficient evidence to create a triable issue as to whether Duff justifiably relied on the affirmative assurances, if any, the Regions Bank's representative provided him in making the investment decisions, which resulted in his economic losses. As such, the Court will allow Plaintiff Duff to proceed to trial on his misrepresentations claims.

## CONCLUSION

For all of the reasons stated, *Regions Bank's Motion for Summary Judgment* and *Regions Bank's Motion for Partial Summary Judgment with Respect to Plaintiff James Duff* (Docket Entry Nos. 105 and 99) are hereby DENIED.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE